UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ X

CAMACHO MAURO MULHOLLAND
LLP,

            **Plaintiff,**

        **- against -**

OCEAN RISK RETENTION GROUP,
INC.,

           **Defendant.**

------------------------------------------------------ X

**OPINION AND ORDER**

**09 Civ. 9114 (SAS)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/26/10

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

Camacho Mauro Mulholland LLP ("Camacho") brings this action alleging breach of contract, account stated in the amount of $160,244.99 plus pre-judgment interest in the amount of $11,584.40 for a total of $171,829.39, and quantum meruit against Ocean Risk Retention Group, Inc. ("Ocean Risk") to recover monies for legal services rendered from June 2008 until October 2009.[1]

---

[1]   At the request of the Court, Camacho submitted the following updated calculations through May 24, 2010: account stated in the amount of $159,924.99 plus pre-judgment interest in the amount of $13,319.78 for a total of $173,244.77.

Camacho now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the account stated claim.  For the reasons stated herein, Camacho's motion is granted.

## II.    BACKGROUND[2]

Camacho is a law firm engaged in the practice of law in New York and New Jersey.[3]  Ocean Risk is a risk retention group that insures taxi policy holders.[4]  Engle Martin & Associates ("Engle Martin") is a third-party administrator retained by Ocean Risk to handle claims arising from Ocean Risk's taxi cab program.[5]  Crawford & Company ("Crawford") took over as third-party administrator on or about July 2009.[6]

Ocean Risk retained Engle Martin on February 15, 2008.[7]  Engle

---

[2]    Except as noted, the following facts are undisputed.

[3]    *See* Camacho Rule 56.1 Statement in Support of the Motion for Summary Judgment ("Pl. 56.1") ¶ 1; Ocean Risk Rule 56.1 Statement in Opposition to Camacho Motion for Summary Judgment ("Def. 56.1") ¶ 1.

[4]    *See* Pl. 56.1 ¶ 2; Def. 56.1 ¶ 2.

[5]    *See* Pl. 56.1 ¶ 3; Def. 56.1 ¶ 3.  When Engle Martin was notified of a lawsuit against an Ocean Risk insured and/or Ocean Risk, Engle Martin would assign legal counsel for the action. *See* Pl. 56.1 ¶ 4; Def. 56.1 ¶ 4.

[6]    *See* Pl. 56.1 ¶ 20; Def. 56.1 ¶ 20.

[7]    *See* Pl. 56.1 ¶ 3. *See also* Affidavit of Thomas J. Bracken, attorney for Ocean Risk, in Opposition to Camacho Motion for Summary Judgment

Martin was responsible in turn for retaining legal counsel to represent Ocean

Risk's insured taxi companies and drivers in New Jersey and Pennsylvania

litigations.[8]  The parties disagree on whose behalf Camacho was retained in June

2008.[9]  Camacho alleges that it was retained by Ocean Risk.[10]  Ocean Risk claims

that Camacho was directly retained by Engle Martin.[11]

     Engle Martin issued Litigation Guidelines to Camacho for each case,

copies of which were sent to Ocean Risk.[12]  As per the Litigation Guidelines,

---

("Bracken Aff.") ¶ 9; Affidavit of Jeanette Frankenberg, president of Ocean Risk, in Opposition to Camacho Motion for Summary Judgment ("Frankenberg Aff.") ¶ 5 (attached as Ex. A to Bracken Aff.).

[8]    *See* Bracken Aff. ¶ 10.

[9]    *See* Pl. 56.1 ¶ 5; Bracken Aff. ¶ 11.

[10]    *See* Pl. 56.1 ¶ 5 ("In June 2008 [Camacho] was retained to perform legal services on behalf of Ocean Risk.").  Camacho has not submitted evidence of a written retainer agreement between Camacho and Ocean Risk.

[11]    *See* Def. 56.1 ¶ 5 ("[Camacho] was directly retained by [Engle Martin].").  Camacho submits a copy of Engle Martin Claims Administrative Services Litigation Guidelines for Defense Counsel, Ex. 1 to Affidavit of Rachel Tanzer ("Tanzer Aff."), Assistant Billing Director of Camacho (attached as Ex. G to Affidavit of Andrea Sacco Camacho, attorney for Plaintiff ("Camacho Aff.")).  The Litigation Guidelines as provided state that "[t]his will confirm that [Camacho] has been retained to represent the interests of Merismond Dessin and Zeta 5 Corp. in the above-captioned matter."  This document is not a general retainer agreement between Engle Martin and Camacho.

[12]    *See* Pl. 56.1 ¶ 7; Def. 56.1 ¶ 7.

3

Engle Martin received all legal invoices from Camacho relating to the taxi cab program.[13]  According to the Litigation Guidelines, Camacho's legal invoices were to be submitted to Engle Martin on a quarterly basis.[14]  Through an account funded by Ocean Risk, Engle Martin then paid Camacho on behalf of Ocean Risk.[15]

In the first quarter of 2009, Jeanette Frankenberg ("Frankenberg"), president of Ocean Risk, requested that all outstanding unpaid Camacho invoices ("the Outstanding Invoices") be forwarded to her.[16]  Engle Martin prepared and forwarded a spreadsheet to Frankenberg shortly thereafter enumerating all the

---

[13]     See Bracken Aff. ¶ 14.

[14]     See Pl. 56.1 ¶ 8; Def. 56.1 ¶ 8.

[15]     See Pl. 56.1 ¶ 11; Def. 56.1 ¶ 11.  See also Litigation Guidelines, Ex. 1 to Tanzer Aff. (attached as Ex. G. to Camacho Aff.) (emphasis in original).  The Litigation Guidelines state as follows:

> EMCAS reviews and approves all attorney invoices.  Invoices sent to the undersigned must include the proper case caption, file number, firm tax identification number, each individual timekeeper's total hours, each timekeeper's rate, total sum per timekeeper, itemization of disbursements, sum total of disbursements, and sum total of invoice including time and disbursements. *** ***Invoices (including 3rd party vendor invoices), not containing this information will be returned to you, without payment.***

The parties do not indicate that Ocean Risk and/or Engle Martin returned any invoices to Camacho.

[16]     See Pl. 56.1 ¶ 13; Def. 56.1 ¶ 13.

4

Outstanding Invoices and the monies owed to Camacho.[17]  Engle Martin also forwarded some number of the actual Outstanding Invoices to Frankenberg, but the parties dispute whether Engle Martin sent all or only a select set of the Outstanding Invoices at this time.[18]

Frankenberg advised that she would direct Engle Martin as to how to proceed regarding the Outstanding Invoices.[19]  In March 2009, payment of Camacho's invoices ceased.[20]  In July 2009, payment in the amount of $17,067.68 was made on sixteen of the Outstanding Invoices.[21]  The parties dispute whether this payment was made "without objection or reduction."[22]

---

[17]    *See* Pl. 56.1 ¶ 14; Def. 56.1 ¶ 14.

[18]    *See* Pl. 56.1 ¶ 15 ("Engle Martin . . . forwarded all of [Camacho's] outstanding invoices to Ms. Frankenberg."); Def. 56.1 ¶ 15 ("Engle Martin only forwarded [Camacho's] first quarter invoices to Ms. Frankenberg.").

[19]    *See* Pl. 56.1 ¶ 16; Def. 56.1 ¶ 16.

[20]    *See* Pl. 56.1 ¶ 17; Def. 56.1 ¶ 17.

[21]    *See id.*

[22]    Pl. 56.1 ¶ 18 ("The payment . . . was made *without objection or reduction* by Engle Martin or Ocean Risk.") (emphasis added); Def. 56.1 ¶ 18 ("While the payment was made *without what appeared to be an objection or reduction*, the payment was to be applied to the specific referenced invoices [and] was not an acknowledgment of the entire 'running' balance nor acceptance of any future invoices that remain part of the plaintiff's alleged account stated.") (emphasis added).

In July 2009, Engle Martin and Ocean Risk severed their
relationship[23] and Crawford became the new third-party administrator on behalf of
Ocean Risk.[24]  In September 2009, Crawford forwarded full payment to Camacho
on one of the Outstanding Invoices in the amount of $1,339.50.[25]

In October 2009, Camacho severed its relationship with Ocean Risk.[26]
Camacho then prepared and forwarded a spreadsheet to Ocean Risk delineating
the remaining Outstanding Invoices and stating the amount of $160,244.99
allegedly owed by Ocean Risk.[27]  The parties dispute whether it was Ocean Risk or
Engle Martin that prepared and sent a spreadsheet to Camacho in December 2009
acknowledging that 162 Outstanding Invoices remained, but calculating the
amount owed at $159,793.54.[28]  The parties now dispute whether Ocean Risk is

---

[23]    *See* Pl. 56.1 ¶ 19; Def. 56.1 ¶ 19.  Ocean Risk claims that Camacho
forwarded cases as late as October 2009.

[24]    *See* Pl. 56.1 ¶ 20; Def. 56.1 ¶ 20.

[25]    *See* Pl. 56.1 ¶ 22; Def. 56.1 ¶ 22.  Camacho once again claims there
was no "objection or reduction" raised regarding the payment of this amount while
Ocean Risk continues to argue that the payment was not an acknowledgment of
the "running" balance.

[26]    *See* Pl. 56.1 ¶ 26; Def. 56.1 ¶ 26.

[27]    *See* Pl. 56.1 ¶ 27; Def. 56.1 ¶ 27.

[28]    *See* Pl. 56.1 ¶ 28; Def. 56.1 ¶ 28.  Ocean Risk or Engle Martin
presumably sent this spreadsheet to Camacho after the commencement of this

responsible for payment of the 162 Outstanding Invoices allegedly totaling

$160,244.99 plus pre-judgment interest in the amount of $11,584.40 for a total of

$171,829.39.[29]

## III.   APPLICABLE LAW

### A.   Summary Judgment

Summary judgment is appropriate "if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue

as to any material fact and that the movant is entitled to judgment as a matter of

law."[30] "'An issue of fact is genuine if the evidence is such that a reasonable jury

---

action in November 2009. *See* Ocean Risk Memorandum of Law in Opposition to
Camacho Motion for Summary Judgment ("Opp. Mem.") at 11. "An objection
made [to an alleged account stated] for the first time upon the commencement of
proceedings will not suffice." *Feldman v. Talon Paint Prods., Inc.*, No. 01 Civ.
5657, 2002 WL 31385826, at *5 (S.D.N.Y. Oct. 22, 2002) (quotation marks and
citation omitted). *See also O'Connell & Aronowitz v. Gullo,* 644 N.Y.S.2d 870,
871-72 (3d Dep't 1996) (attorney's claim for account stated was established where
client did not object to statement of account until attorney commenced proceeding
to recover legal fees).

[29]     *See* Pl. 56.1 ¶ 29; Def. 56.1 ¶ 29.  Ocean Risk maintains that
Camacho is not entitled to be paid this sum because Camacho failed to satisfy
Engle Martin's billing guidelines and obligations.  Specifically, Ocean Risk claims
that Engle Martin owed a duty to Ocean Risk to ensure that Camacho was
following billing guidelines. Def. 56.1 ¶ 29. This question is not at issue for
purposes of an account stated analysis.

[30]     Fed. R. Civ. P. 56(c).

7

could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law.'"[31] "[T]he burden of demonstrating that no material fact exists lies with the moving party . . . ."[32]

In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact. "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim."[33] To do so, the non-moving party must do more than show that there is "'some metaphysical doubt as to the material facts,'"[34] and it "'may not rely on conclusory allegations or unsubstantiated speculation.'"[35] Even so, "'all that is required [from a non-moving party] is that sufficient evidence

---

[31]     *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 34 (2d Cir. 2008)).

[32]     *Miner v. Clinton Cty., N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008) (citing *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007)). *Accord Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

[33]     *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).

[34]     *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (quoting *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[35]     *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)).

8

supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"[36]

In determining whether a genuine issue of material fact exists, the court must "constru[e] the evidence in the light most favorable to the non-moving party and draw all reasonable inferences" in that party's favor.[37]  "'[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.'"[38]  "'Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'"[39]  Summary judgment is therefore "appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."[40]

---

[36]   *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)).

[37]   *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009) (citing *Anderson*, 477 U.S. at 247-50, 255).

[38]   *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009) (quoting *Raskin v. Wyatt Co.*, 125 F.3d 55, 65 (2d Cir. 1997)).

[39]   *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997)).  *Accord Anderson*, 477 U.S. at 249.

[40]   *Pyke v. Cuomo*, 567 F.3d 74, 76 (2d Cir. 2009).

## B.    Account Stated

To establish a claim for account stated, a plaintiff must plead that:

"(1) an account was presented; (2) it was accepted as correct; and (3) [the] debtor

promised to pay the amount stated."[41]  The account stated is "based upon prior

transactions between [the parties] with respect to the correctness of the account

items and balance due."[42]  Recovery on a claim for account stated is permitted on

the theory that "the parties have, by their conduct, evidenced an agreement upon

the balance of an indebtedness."[43]

"Even though there may be no express promise to pay . . . from the

very fact of stating an account, a  promise arises by operation of law as obligatory

as if expressed in writing."[44]  An implied account stated

> may  sometimes  result  from  the  retention  of  accounts

---

[41]    *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d
395, 411 (S.D.N.Y. 2009). *Accord Air Atlanta Aero Eng'g. Ltd. v. SP Aircraft
Owner I, LLC*, 637 F. Supp. 2d 185 (S.D.N.Y. 2009) ("Under New York law, an
'account stated' refers to a promise by a debtor to pay a stated sum of money
which the parties had agreed upon as the amount due.").

[42]    *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244
F.R.D. 204, 216 (S.D.N.Y. 2007) (citing *Jim-Mar Corp. v. Aquatic Const., Ltd.*,
600 N.Y.S.2d 790, 790 (3d Dep't 1993) (citations omitted)).

[43]    *Manhattan Motorcars*, 244 F.R.D. at 216 (citing *Interman Indus.
Prods., Ltd. v. R.S.M. Electron Power, Inc.*, 37 N.Y.2d 151, 153-54 (1975)).

[44]    *IMG Fragrance*, 679 F. Supp. 2d at 411-12 (citation omitted).

> current without objection. But the result does not always
> follow. It varies with the circumstances that surround the
> submission of the statements and those circumstances
> include, of course, the relation between the parties.[45]

An implied account stated generally arises when "a party receiving a statement of

account keeps it without objecting to it within a reasonable time or if the debtor

makes partial payment."[46]  As such, an account stated is implied when a creditor

sends a statement of an account to a debtor, and the debtor – who has a duty to

examine the statement to ascertain whether it is correct or not – keeps it for a

reasonable time without objecting to the correctness of the account.[47]

For "an objection to . . . an account stated to have any meaning, the

term 'objection' must refer to 1) an objection of the debtor and must be 2)

communicated to the entity owed."[48]  This principle "does not refer to a dispute

---

[45]    *Manhattan Motorcars*, 244 F.R.D. 216 (S.D.N.Y. 2007) (citing
*Newburger-Morris Co. v. Talcott*, 219 N.Y. 505, 512 (1916)).

[46]    *IMG Fragrance*, 679 F. Supp. 2d at 411.

[47]    *See Ally & Gargano, Inc. v. Comprehensive Accounting Corp.*, 615 F.
Supp. 426, 429 (S.D.N.Y. 1985).

[48]    *FTI Consulting, Inc. v. Rossi*, No. 03 Civ. 4033, 2004 WL 359378, at
*4 (S.D.N.Y. Feb. 25, 2004) (citation omitted). *Accord Lankler Siffert & Wohl,
LLP v. Rossi*, 287 F. Supp. 2d 398, 408 (S.D.N.Y. 2003) (granting summary
judgment where plaintiff law firm claimed it had not received any objection to its
bills and the alleged objections made by defendants were "conclusory and
unsubstantiated, and [did] not provide any detail as to the nature of the
objections.").

between the debtor and third parties."[49] "[W]here the question is whether the

alleged debtor retained a statement of account without objecting within a

reasonable time," the issue "almost always is for the jury."[50] Where the facts will

"give rise to only one reasonable inference in respect of whether there was assent

to the statement of account, the issue is one of law."[51] An account stated "may be

reopened upon proof of fraud, mistake or other equitable considerations."[52]

## C.     Pre-judgment Interest

It is well-settled that state law applies to an award of pre-judgment

interest in a diversity action in federal court.[53] Section 5001(a) of the New York

Civil Practice Law and Rules ("CPLR") governs the issue of pre-judgment interest

---

[49]     *FTI Consulting*, 2004 WL 359378, at *4.

[50]     *Genuity v. Nortel*, No. 02 Civ. 7883, 2002 WL 31802321, at *1
(S.D.N.Y. Dec. 13, 2002). *Accord Epstein v. Turecamo*, 684 N.Y.S.2d 62, 622 (2d
Dep't 1999) ("[w]hether a bill has been held without objection for a period of time
sufficient to give rise to an inference of assent, in light of all the circumstances
presented, is ordinarily a question of fact, and becomes a question of law only in
those cases where only one inference is rationally possible.") (citation omitted).

[51]     *Genuity*, 2002 WL 31802321, at *1.

[52]     *Guandong Enters. (N. Am.) Fur Holdings Ltd. v. Hennessy*, No. 01
Civ. 0620, 2002 WL 1000953, at * 17 (S.D.N.Y. May 15, 2002) (citation
omitted). *Accord Bresler v. Hostage*, 696 F. Supp. 46, 49 (S.D.N.Y. 1988).

[53]     *See, e.g., Baker v. Dorfman*, 239 F.3d 415, 425 (2d Cir. 2000);
*Schwimmer v. Allstate Ins. Co.*, 176 F.3d 648, 650 (2d Cir. 1999).

and provides that

> interest shall be recovered upon a sum awarded because of
> a breach of performance of a contract, or because of an act
> or omission depriving or otherwise interfering with title to,
> or possession or enjoyment of, property, except that in an
> action of an equitable nature, interest and the rate and date
> from which it shall be computed shall be in the court's
> discretion.[54]

Actions for account stated are generally considered equitable in nature.[55]

## IV.   DISCUSSION

### A.   Ocean Risk Is a Proper Party to the Account Stated

Ocean Risk asserts that it did not enter into a retainer agreement with

Camacho and therefore cannot be held to any alleged account stated.[56]  The lack of

a direct contract between Ocean Risk and Camacho is not dispositive.[57]  "What is

required for an account stated is the receipt of a bill which is not objected to by the

---

[54]   CPLR § 5001(a).

[55]   *See Samara v. Gangemi & Gangemi,* No. 02 Civ. 1407, 2005 WL
1076320, at *3 (S.D.N.Y. May 3, 2005) (citing *EMI Music Mktg. v. Avatar
Records, Inc.*, 364 F. Supp. 2d 337, 345 (S.D.N.Y. 2005)).

[56]   *See* Opp. Mem. at 3 ("Despite plaintiff's contentions in its complaint,
Ocean Risk *did not enter* into a retainer agreement with plaintiff.") (emphasis in
original).

[57]   *See FTI Consulting*, 2004 WL 359378, at *3 ("the contract [between
plaintiff and one defendant] is not relevant to the account stated claim [against
another defendant not named in the contract] . . .").

party receiving the bill."[58]  Though Ocean Risk did not receive the bills directly,

the relationship between Ocean Risk and Engle Martin demonstrates the extent to

which Ocean Risk had the power to request and review invoices held by Engle

Martin and to direct the distribution of the money from the account Ocean Risk

funded for that purpose.[59]  Ocean Risk is thus responsible for paying Camacho.

As such, Ocean Risk is the appropriate debtor to an alleged account stated with

Camacho.[60]

### B.    Account Stated Based on Implied Agreement

Camacho has not provided an express agreement between itself and

Ocean Risk for the monies owed.  As a result, any account stated must be based on

an implied agreement.

---

[58]     *Id.*

[59]     *See* Def. 56.1 ¶ 10.  The parties do not dispute that Ocean Risk
provided the funds in the account from which Engle Martin paid Camacho. *See*
Pl. 56.1 ¶ 11; Def. 56.1 ¶ 11.  They also do not dispute that Ocean Risk could and
did direct disbursement to Camacho of funds provided to Engle Martin for that
purpose. *See* Pl. 56.1 ¶ 16; Def. 56.1 ¶ 16.

[60]     *See Air Atlanta*, 637 F. Supp. 2d at 197 ("Without an express
agreement *or some other form of indebtedness* . . . a cause of action for account
stated is unavailable.") (emphasis added).  Ocean Risk's controlling relationship
with Engle Martin demonstrates this alternative form of indebtedness to Camacho
despite the lack of a direct contract.

14

### 1. No Genuine Issue of Material Fact Exists Regarding the Sending of a Statement of Fees from Camacho to Ocean Risk

Ocean Risk confirms that Engle Martin received invoices and spreadsheets from Camacho.[61]  Ocean Risk also states that it requested and reviewed these invoices from Engle Martin and that it directed the distribution of the money from the account Ocean Risk funded for that purpose.[62]  Although Ocean Risk claims not to have received the individual Camacho files from Engle Martin until "mid-October" of 2009, Ocean Risk did in fact receive them in response to its request.[63]  As Ocean Risk concedes that it received the invoices, spreadsheets, and individual files upon its request – despite its arguments regarding timing – there is no genuine issue of material fact as to whether a statement of fees was sent to the debtor by the creditor.

### 2. Failure to Object to the Fees as Stated Within a Reasonable Time

#### a. No Genuine Issue of Material Fact Exists Regarding Ocean Risk's Failure to Object to the Fees Claimed by Camacho

---

[61]    *See* Def. 56.1 ¶¶ 10, 11, 27.

[62]    *See id.* ¶ 10.

[63]    Opp. Mem. at 11.

15

Ocean Risk provides no evidence  – either from itself or from Engle

Martin – of a written objection to the Outstanding Invoices.[64]  Rather, Ocean Risk

claims that "sometime in the first quarter of 2009," it requested that Engle Martin

"forward all invoices from all law firms handling matters for the program,

including [Camacho's] invoices to Ocean Risk."[65]  Ocean Risk further states that

> Ocean Risk contacted Kimberly Sommers at Engle Martin
> and expressed its discontent with Engle Martin's
> management of the legal review process . . . . Essentially,
> Ocean Risk disputed the invoices and demanded they see
> all the bills as the legal fees were rising out of proportion
> historically to what Ocean Risk had seen previously in the
> program.  Ocean Risk requested that Engle Martin provide
> reports that could breakdown legal fees and expenses for
> the handling of each individual file, and confirm the
> accuracy and validity of these expenses as they correlated
> to the file.  Also, Ocean Risk requested that Engle Martin
> prepare and forward a spreadsheet delineating all invoices
> and monies owed to all law firms, including [Camacho],
> that had been retained by Engle Martin.[66]

While the above demonstrates that Ocean Risk objected to Engle Martin's

---

[64]     Although Ocean Risk submits emails between Engle Martin and
Ocean Risk discussing billing for several firms including Camacho, these emails
were not sent to Camacho. *See* Reply Affidavit of Andrea Sacco Camacho
("Camacho Reply Aff."), plaintiff's attorney, ¶ 13 (referencing Ex. 3 to
Frankenberg Aff., attached as Ex. A to Bracken Aff.).

[65]     Def. 56.1 ¶ 10. Ocean Risk claims that Engle Martin only forwarded
Camacho's first quarter invoices.

[66]     *Id.*

management of the claims nearly a year after Camacho was retained, it does not

show that Ocean Risk ever objected to Camacho's fees as stated in the

Outstanding Invoices.  In fact, attorney Camacho states that objections were

"never communicated to [Camacho] by Ocean Risk, Engle Martin or Crawford . . .

[and that] Camacho has never received a specific objection to its work from Ocean

Risk, Engle Martin or Crawford."[67]  Nor does Ocean Risk claim it communicated

any objections to Camacho.[68]  As such, there is no genuine issue of material fact

on the question of Ocean Risk's failure to object.

### b.    No Genuine Issue of Material Fact Exists Regarding Ocean Risk's Reasonable Time to Object

From the time of Camacho's retention – whether directly by Engle

Martin or indirectly through Ocean Risk – in June 2008 to sometime in the first

quarter of 2009, Ocean Risk apparently neither requested to review the invoices

nor objected to the legal fees as stated.[69]  Ocean Risk notes, however, that

---

[67]    Camacho Aff. ¶ 13.

[68]    *See FTI Consulting*, 2004 WL 359378, at *4 ("Objection" must refer to "1) an objection of the debtor and must be 2) communicated to the entity owed.") (citing *Silver Hill Hosp.*, 1999 WL 447446, at *2, *7).

[69]    According to Camacho, "[f]rom the time [Camacho] was retained in June 2008 through present, seventy-nine (79) invoices were paid in full by Ocean Risk's third party claims administrators, without objection or reduction.  One hundred and sixty-two (162) [Camacho] invoices have been received, held in

17

Camacho commenced this lawsuit against Ocean Risk on or about November 4, 2009.[70]  Ocean Risk argues that portions of the alleged account stated consist of invoices dated in September and October 2009, a mere one or two months prior to the start of the suit.[71]  As such, Ocean Risk asserts that a failure to object within two months is reasonable.

This assertion does not address the fifteen months during which Ocean Risk failed to object to any invoices and also apparently failed to review the payments made by its third-party administrator with monies from the account Ocean Risk funded for that purpose.  Nor has Ocean Risk presented evidence that it has ever objected to the invoices that are dated within several months of the commencement of this action.  Given the relationship between the parties – that is, Ocean Risk's funding of Engle Martin's legal fees account, ability to request and review Camacho's invoices, and power to direct Engle Martin's payments of invoices – Ocean Risk's delay in objecting to the Outstanding Invoices is fatal.[72]

---

silence, and remain unpaid."  Camacho Memorandum of Law in Support of the Motion for Summary Judgment at 4.

[70]     *See* Opp. Mem. at 11.

[71]     *See id.*

[72]     *See, e.g., Navimex S.A. de C.V. v. S/S "Northern Ice,"* 617 F. Supp. 103, 106 (S.D.N.Y. 1984) ("Analysis of the course of conduct between the parties reveals that an objection after five months . . . was unreasonable.").

### 3. No Genuine Issue of Material Fact Exists Regarding Partial Payment on the Balance

The parties do not dispute that after a hiatus of five months, Camacho received payment in the amount of $17,067.68 on sixteen of the Outstanding Invoices in July 2009.[73] Two months later, in September 2009, Crawford fully paid one of the Outstanding Invoices in the amount of $1,339.50.[74] Ocean Risk concedes these payments but repeatedly claims that satisfaction of individual invoices does not represent an acknowledgment of correctness regarding the entire sum owed.[75] Ocean Risk cites no authority for this proposition. "[P]artial payment is considered acknowledgment of the validity of the account."[76] As such, Ocean Risk's payment through Crawford of these sums constitutes acknowledgment of the account stated and there is no genuine issue of material fact on the question of partial payment.

---

[73] *See* Pl. 56.1 ¶ 17; Def. 56.1 ¶ 17.

[74] *See* Pl. 56.1 ¶ 22; Def. 56.1 ¶ 22. Camacho once again claims there was no "objection or reduction" raised regarding the payment of this amount while Ocean Risk protests again that the payment was not an acknowledgment of the "running" balance.

[75] *See* Opp. Mem. at 12.

[76] *Kramer, Levin, Nessen, Kamin & Frankel v. Aronoff,* 638 F. Supp. 714, 720 (S.D.N.Y. 1986) (finding an account stated where defendant had made two partial payments against a total outstanding balance).

## 4. Pre-judgment Interest

Camacho originally requested judgment on the account stated claim in the amount of $160,244.99, plus pre-judgment interest in the amount of $11,584.40, for a total of $171,829.39 through March 31, 2010.[77] At the request of the Court, Camacho submitted an updated spreadsheet detailing the following calculations through May 24, 2010: an account stated in the amount of $159,924.99, pre-judgment interest in the amount of $13,319.78 at nine percent per annum, for a total of $173,244.77.

In accordance with CPLR section 5001(a), the calculation of pre-judgment interest on an account stated claim is subject to my discretion.[78] I find that Ocean Risk had a reasonable time to object to all the Outstanding Invoices. As such, I find an account stated exists in the sum of $159,924.99. Pre-judgment interest is appropriate in the amount of $13,319.78 at nine percent per annum from

---

[77]     *See* Camacho Aff. ¶ 44. *See also* Ex. 8 to Tanzer Aff. (attached as Ex. G. to Camacho Aff.), setting forth the case name, invoice number, invoice date, and interest accrued.  Camacho calculated that $138,847.25 was for legal fees, $21,397.74 was for expenses paid by Camacho on behalf of Ocean Risk and/or Ocean Risk insureds, and $11,584.40 was for the interest calculated at nine percent per annum from the date that each invoice was initially sent through March 31, 2010. *See* Camacho Aff. ¶ 44.

[78]     *See Samara*, 2005 WL 1076320, at *3 (citing *EMI Music Mktg. v. Avatar Records, Inc.*, 364 F. Supp. 2d 337, 345 (S.D.N.Y. 2005)).

the date of each invoice through May 24, 2010.  Ocean Risk is thus liable to

Camacho for an account stated plus pre-judgment interest in the sum of

$173,244.77.

## V.    CONCLUSION

For the foregoing reasons, Camacho's motion for summary judgment

on the issue of account stated is granted.  The clerk of the court is directed to close

this motion [Docket No. 21] and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            May 26, 2010

21

## - Appearances -

**For Plaintiff:**

Andrea Sacco Camacho, Esq.
Camacho Mauro Mulholland LLP
350 Fifth Avenue - Suite 5101
New York, NY 10118
(212) 947-4999

**For Defendant:**

Thomas J. Bracken, Esq.
Stalker Vogrin Bracken & Frimet LLP
150 Broadway - Suite 1200
New York, NY 10038
(212) 513-1075